# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| TASHA VYE, Individually and on Behalf of All Other Persons Similarly Situated, </br></br>Plaintiff, </br></br>v. </br></br>HANNAFORD BROS. CO., LLC, </br></br>Defendant. | ) ) ) ) ) ) ) ) Docket No. 2:24-cv-00339-NT ) ) ) ) ) |

## ORDER ON PLAINTIFFS' MOTION
## FOR NOTICE AND CONDITIONAL CERTIFICATION

Plaintiff Tasha Vye was a bakery manager at grocery stores operated by Defendant Hannaford Bros. Co., LLC ("**Hannaford**"). She filed a collective and class action complaint alleging that Hannaford violated the Fair Labor Standards Act ("**FLSA**") and Maine law by misclassifying Hannaford department managers as exempt from overtime compensation and failing to pay them the overtime pay they were due. Before me is the motion for notice and to conditionally certify a FLSA collective (ECF No. 24) filed by Plaintiff Vye and Opt-In Plaintiffs Michael Scott, DestinyLynn Sortino, Ruth Iverson, Shelly Ann Corriveau, and Jordan Cole (collectively, the "**Plaintiffs**"). Hannaford opposes the request. For the following reasons, I **GRANT** the motion for conditional certification and **RESERVE RULING** on the motion for notice.

## BACKGROUND

On October 2, 2024, Plaintiff Tasha Vye filed a complaint in this Court, alleging violations of the FLSA.[1] Collective and Class Action Compl. ("**Compl.**") (ECF No. 1). Vye worked as a Bakery Manager in the Hannaford supermarket in Lewiston, Maine from April 2021 to September 2022. Compl. ¶ 9. She claims that she and other current and former salaried Hannaford employees with department manager titles were entitled to—but not paid—overtime wages when they worked more than forty hours a week. Compl. ¶ 1. Since Vye filed the complaint, ten people (including Vye) have filed written consents to join the FLSA action as party plaintiffs. *See* Consents to Join Collective Action Under the Fair Labor Standards Act, 29 U.S.C. § 216(b) (ECF Nos. 1-1, 7-1, 8-1, 17-1, 18-1, 52-1). On December 31, 2024, the Plaintiffs filed their motion requesting that I conditionally certify a collective of salary-paid Hannaford department managers and that I approve notice to the collective informing them of their right to join the lawsuit. Pls.' Mot. for Notice and Conditional Certification ("**Pls.' Mot.**") 1 (ECF No. 24). Hannaford opposes the motion, arguing that conditional certification is not appropriate in this case. Def.'s Opp'n to Pls.' Mot. for Conditional Certification ("**Def.'s Opp'n**") 1–2 (ECF No. 27).

---

[1] Vye also brings claims under Maine wage and overtime laws, 26 M.R.S. §§ 621-A, 664, 670, on behalf of herself and other department and assistant department managers as part of a class action. Collective and Class Action Compl. ¶¶ 48–65, 79–88 (ECF No. 1). All that is before me now, however, is the motion to conditionally certify a collective for the FLSA claim.

# DISCUSSION

## I. FLSA Conditional Certification

### A. Legal Standard

The FLSA requires employers to pay employees overtime wages—at least one-and-a-half times the regular rate—for any hours worked beyond a forty-hour workweek. 29 U.S.C. § 207(a)(1). Employees who believe their employer violated the FLSA overtime provisions may sue to recover unpaid overtime compensation. 29 U.S.C. § 216(b). The FLSA allows employees to maintain the lawsuit as a collective action on behalf of themselves "and other employees similarly situated." *Id.*

To proceed as a FLSA collective action, employees must affirmatively "opt in" by filing written consents. *Id.* ("No employee shall be a party plaintiff . . . unless he gives his consent in writing . . . and such consent is filed in the court in which such action is brought."). In addition, the court must certify that opt-in plaintiffs are actually "similarly situated" as § 216(b) requires. *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 364 (D. Me. 2010).

District courts in the First Circuit employ a two-step approach to certification. "The first stage determines whether notice should be given to potential collective action members and usually occurs early in a case, before substantial discovery, based only on the pleadings and any affidavits which have been submitted." *Id.* (citation and quotations omitted). The burden at the first stage belongs to the plaintiff, who "must make a 'modest factual showing' that [s]he and others, with similar—but not necessarily identical—jobs suffered from a common unlawful policy or plan." *Giguere v. Port Res., Inc.*, 2:16-cv-58-NT, 2016 WL 6996133, at *3 (D. Me. Nov. 30, 2016)

(quoting *Prescott*, 729 F. Supp. 2d at 364). If the plaintiff makes this showing, the court authorizes the plaintiff to send out a notice inviting similarly situated employees to join the collective action as opt-in plaintiffs. *Curtis v. Scholarship Storage Inc.*, No. 2:14-cv-303-NT, 2015 WL 1241365, at *1 (D. Me. Mar. 18, 2015). The first stage "typically results in conditional certification of a collective action" because the standard is considered "not particularly stringent, fairly lenient, flexible, not heavy, and less stringent than that for joinder . . . or for separate trials . . . ." *Levecque v. Argo Mktg. Grp., Inc.*, No. 2:14-cv-00218-JAW, 2015 WL 3672647, at *7–9 (D. Me. June 12, 2015) (quoting *Prescott*, 729 F. Supp. 2d at 364) (quotations omitted).

The second stage occurs later, after discovery, if the employer "move[s] to decertify the collective action." *Prescott*, 729 F. Supp. 2d at 364. Then the court must "make a factual determination as to whether there are similarly-situated employees who have opted in." *Id.* (citation omitted). Relevant factors include "factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action." *Id.* at 364–65 (citations, brackets, and quotations omitted).

The motion before me—which seeks conditional certification of a proposed collective action—involves only the first stage of this analysis.

    **B.    Whether the Hannaford Employees Are "Similarly Situated"**

        **1.    The Plaintiffs' Factual Showing**

The Plaintiffs request that I conditionally certify the following FLSA collective:

4

> All current and former salary-paid department managers in Defendant's stores, including Bakery (or Bakery Sales) Managers, Deli (or Deli Sales) Managers, Deli/Bakery (or Deli/Seafood, or Deli/Seafood Sales, or Deli/Bakery Sales) Managers, Produce (or Produce Sales) Managers, Meat Market (or Meat Market Sales) Managers, Meat/Seafood (or Meat Market/Seafood, or Meat Market/Seafood Sales) Managers, Customer Service Managers, Center Store Managers, plus current and former salary-paid Assistant-titled or Trainee-titled employees working those same departments (collectively, "Department Managers" or "DMs"), from three years prior to the date the Court approves conditional certification until the date on which Hannaford reclassified these positions as non-exempt, but excluding (i) the "Evening Operations Managers" and "Associate Relations Managers," and (ii) any DMs whose claims were released as Massachusetts class action settlement participants listed in Exhibit A to the Settlement Agreement approved by the Court in in *Prinzo v. Hannaford Bros. Co., LLC*, 21-cv-11901-WGY (D. Mass.) who were not paid as salaried exempt at any time after October 28, 2023 for working an exempt-paid DM position (the "Collective").

Pls.' Mot. 2.

At this first stage, I must decide whether the proposed FLSA collective comprises similarly situated employees.[2] The FLSA itself does not define "similarly situated." Nor has the First Circuit weighed in on what the term means. "Nevertheless, generally speaking, 'courts have found that "similarly situated" employees have similar (not identical) job duties and pay provisions, and are victims

---

[2] The ultimate question in the Plaintiffs' case is whether Hannaford "improperly classified" department managers as exempt from overtime "in order to avoid the FLSA's wage provisions," which "would violate the FLSA." *See Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 369 (D. Me. 2010). To defend against the FLSA claim, Hannaford will have to establish that the managers in question fell within the FLSA exemption for workers "employed in a bona fide executive, administrative, or professional capacity . . . ." *Su v. F.W. Webb Co.*, 110 F.4th 391, 395 (1st Cir. 2024), *cert. denied sub nom. F.W. Webb Co. v. Micone*, 145 S. Ct. 1329 (2025) (quoting 29 U.S.C. § 213(a)(1)). Among other things, the FLSA regulations define employees working in an "administrative" capacity as salaried employees whose primary duty "is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and "includes the exercise of discretion and independent judgment with respect to matters of significance." *Id.* (citing 29 C.F.R. § 541.200(a)).

of a common policy or plan that violated the law.'" *Levecque*, 2015 WL 3672647, at \*9 (quoting *Prescott*, 729 F. Supp. 2d at 364). In deciding whether employees in a would-be collective are similarly situated, courts have considered "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread discriminatory plan was submitted." *Id.* at \*7 (quoting *Lopez v. Tyson Foods, Inc.*, No. 8:06CV459, 2008 WL 3485289, at \*8 (D. Neb. Aug. 7, 2008)) (quotations omitted).

In support of their motion for conditional certification, six of the Plaintiffs—all past or present Hannaford department managers—submitted declarations.[3] *See* Decl. of Pl. Tasha Vye ("**Vye Decl.**") (ECF No. 24-3); Decl. of Opt-In Pl. Michael Scott ("**Scott Decl.**") (ECF No. 24-4); Decl. of Opt-In Pl. DestinyLynn Sortino ("**Sortino Decl.**") (ECF No. 24-5); Decl. of Opt-In Pl. Ruth Iverson ("**Iverson Decl.**") (ECF No. 24-6); Decl. of Opt-In Pl. Shelly Corriveau ("**Corriveau Decl.**") (ECF No. 24-7); Decl. of Opt-In Pl. Jordan Cole ("**Cole Decl.**") (ECF No. 24-8).

Vye's declaration explains that she previously held several hourly positions at various Hannaford locations in Maine. Vye Decl. ¶ 2. She says that when she became a Bakery Manager at the Lewiston Hannaford store, she was reclassified as exempt from the FLSA overtime provisions. Vye Decl. ¶ 3. Once classified as exempt, she was paid a fixed salary and did not receive overtime compensation when she worked more than forty hours a week. Vye Decl. ¶ 3. Vye says she routinely worked more than forty

---

[3] The other four Opt-In Plaintiffs filed declarations with the Plaintiffs' reply. *See* Decl. of Veronica Hamilton (ECF No. 53-1); Decl. of Casey Smith (ECF No. 53-2); Decl. of Kyle Sargent (ECF No. 53-3); Decl. of Talia Smith (ECF No. 53-4).

hours a week and spent the "overwhelming majority" of her time as a Bakery Manager performing the same manual tasks as hourly employees in the bakery department. Vye Decl. ¶ 4. Those tasks included: bagging, labeling, stocking and displaying product according to Hannaford's layout plans; baking; helping and serving customers; moving freight; and cleaning bowls, tables, trays, floors, tools, and appliances. Vye Decl. ¶ 4.

According to Vye, those tasks were rote, routine, and required little independent judgment. Vye Decl. ¶ 5. Instead, she—along with all Hannaford employees, including department managers—was required to follow two Hannaford guidance documents. Vye Decl. ¶ 5. Hannaford's "Labor Standards" lists every task that employees must complete in any Hannaford store and department and the frequency with which to complete them. Vye Decl. ¶ 5. And its "Standard Practices" and accompanying "Standard Practices Training Aids" provide step-by-step instructions on how to properly complete such tasks and how long each task should take. Vye Decl. ¶ 5. Vye states that Hannaford uses these documents in every store to identically guide all department managers' work because Hannaford "expects uniformity in the performance of daily tasks." Vye Decl. ¶ 5.

Finally, Vye maintains that she had "very limited management authority" as Bakery Manager and lacked authority to hire, fire, or discipline employees. Vye Decl. ¶ 7. Such personnel decisions were made by the Hannaford Store Manager and the Associate Relations Manager (the in-house human resources representative). Vye Decl. ¶ 7.

7

The other declarations tell analogous tales. They come from current and former Hannaford employees who were classified as exempt when they worked as Meat Market Manager, Meat Market/Seafood Manager, Deli Manager, Bakery Manager, and Produce Manager across various Hannaford locations in Maine, New Hampshire, and upstate New York. Scott Decl. ¶ 2; Sortino Decl. ¶ 2; Iverson Decl. ¶ 2; Corriveau Decl. ¶ 2; Cole Decl. ¶ 2. All five declarants routinely worked more than forty hours a week but, as department managers, were paid fixed salaries with no overtime compensation. Scott Decl. ¶ 3; Sortino Decl. ¶ 3; Iverson Decl. ¶ 3; Corriveau Decl. ¶ 3; Cole Decl. ¶ 3.

For example, Scott says that he spent the "overwhelming majority" of his daily time on manual, non-exempt work—"the same tasks performed by hourly-paid employees." Scott Decl. ¶ 4. Sortino also spent most of her time on the same type of manual work as hourly employees. Sortino Decl. ¶ 4. Similarly, Iverson says that "the vast majority" of her time was spent performing the same manual, non-exempt work that hourly employees did, which was "virtually identical" to her work as an hourly Deli Associate. Iverson Decl. ¶ 4. As both a Produce Manager and a Bakery Manager, Corriveau "faced a similar daily drill" in preparing and maintaining her department and, like Vye, she "spent the vast majority" of her time in each department "performing manual, non-exempt work." Corriveau Decl. ¶ 4. Cole too says that he spent most of his time on the same type of manual tasks as hourly employees and that his work as a Meat Market/Seafood Manager "was virtually identical" to his earlier work as an hourly employee. Cole Decl. ¶ 4.

8

Though the tasks and duties described by the declarants vary depending on their respective departments, they are sufficiently alike to support the conclusion—at least at this early stage—that the proposed collective members are similarly situated in terms of work experience and pay. From these declarations and other evidence submitted by the Plaintiffs, I can infer that Hannaford had "a common policy or plan that violated the law" relating to how it classified and used its department managers. *See Levecque*, 2015 WL 3672647, at *9 (citation and quotations omitted). I therefore find at this not-particularly-stringent stage that the Plaintiffs have made a "modest factual showing" that they, along with other Hannaford employees in similar department manager positions, suffered from Hannaford's allegedly unlawful policy of misclassifying them as exempt workers to avoid paying them overtime compensation. Vye has identified other potential plaintiffs who managed different Hannaford departments, nine of whom have already filed consent forms to opt into the litigation. The employees who submitted declarations all state that: (1) Hannaford gave them department-manager titles; (2) Hannaford classified them as exempt employees and paid them salaries; (3) Hannaford did not pay them overtime even when they regularly worked over forty hours a week; and (4) their primary duties as managers of their respective departments were the same manual tasks performed by hourly Hannaford employees (as opposed to non-manual work related to management and involving the exercise of discretion and independent judgment on significant matters).

This evidence suffices to suggest that Hannaford had a "widespread" plan to classify department managers as exempt, *Levecque*, 2015 WL 3672647, at *7 (citation and quotations omitted), and that there are " 'other individuals interested in joining suit,' " *id.* at 16 (finding evidence sufficient given "five named plaintiffs (three of whom submitted affidavits), and six others [who] wish[ed] to opt in") (citation omitted).

### 2. Hannaford's Opposition

Hannaford takes issue with the Plaintiffs' declarations and argues that Vye fails to show she is similarly situated to the proposed collective action members.

First, Hannaford argues that its reclassification of the declarants' positions from exempt to non-exempt is not enough to support conditional certification. Def.'s Opp'n 17–18. Hannaford's reclassification plays no role in my finding that the members of the putative collective are similarly situated.

Next, Hannaford contends that the Plaintiffs cannot rely on Hannaford's written job descriptions and corporate training resources given that they also claim the documents are inaccurate. Def.'s Opp'n 18–19. I consider the posted job descriptions and written training resources only to the extent that the job postings show that various managers' "duties and responsibilities" appear to be the same regardless of the specific department or Hannaford store location, which supports my conclusion that they are similarly situated for purposes of conditional certification.

Hannaford also maintains that the Plaintiffs cannot satisfy their stage-one collective action burden by relying on *Prinzo v. Hannaford Brothers Company, LLC*, 343 F.R.D. 250 (D. Mass. 2023), in which the court certified a Rule 23 class of

10

Hannaford "fresh department managers." Def.'s Opp'n 20–21. I agree that *Prinzo* alone would not satisfy the Plaintiffs' burden and thus I do not focus my analysis here on what occurred in the *Prinzo* class action. That said, the conditional certification standard "is sometimes described as less demanding than Rule 23," *Noll v. Flower Foods, Inc.*, 1:15-cv-00493-LEW, 2019 WL 206084, at *5 (D. Me. Jan. 15, 2019), and this case does share relevant similarities with *Prinzo*. For example, the Plaintiffs here propose defining their FLSA collective to include the same fresh departments involved in *Prinzo* (plus two other departments). And like the *Prinzo* class members, the proposed collective members here "have purportedly suffered an identical injury and their grievances are based on the same contention: they have been misclassified as exempt workers." *Prinzo*, 343 F.R.D. at 252. Accordingly, as the *Prinzo* court noted, determining whether each employee was misclassified "turns on the same factual and legal inquiry" of "whether their 'primary duty' is the performance of exempt work." *Id.* Moreover, that central "primary duty inquiry" is "susceptible to common proof." *Id.*

Hannaford further argues that the Plaintiffs have not provided "legitimate evidence" that Vye and the proposed collective members performed the same job duties because the "fill-in-the-blank declarations" are insufficient, while Hannaford has provided eighteen declarations from other employees to the contrary. Def.'s Opp'n 19–20. As to the Plaintiffs' declarations, I find they are sufficient. I take Hannaford's point that the declarations are quite similar in places and contain some of the buzzwords used in determining whether a position qualifies for the FLSA managerial

11

exemption—such as whether the "primary" tasks done the "majority of the time" were "rote," "manual," and "required little independent judgment." But the Opt-In Plaintiffs—who declared their statements true and correct under penalty of perjury—also describe their individual job duties, which varied from department to department, with details to substantiate their somewhat conclusory statements. Those individualized details distinguish these declarations from those in the cases cited by Hannaford. Moreover, Hannaford's contrary declarations are not relevant at the conditional certification stage when courts need not make "any findings of fact with respect to contradictory evidence presented by the parties" or "any credibility determinations with respect to the evidence presented." *Levecque*, 2015 WL 3672647, at *16 (internal citation and quotations omitted).

Hannaford next argues that the Plaintiffs have failed to provide any evidence that the "Center Store Managers" and "Customer Service Managers" included in the proposed collective action are similarly situated. Def.'s Opp'n 21–23. Not so. With their motion, the Plaintiffs submitted three Hannaford job postings for Customer Service Manager positions. *See* Mot. Ex. 10, at 19–36 (ECF No. 24-10). Moreover, with their reply brief, the Plaintiffs submitted declarations from a Center Store Manager and Customer Service Manager who work at a Hannaford in New Hampshire. *See* Decl. of Kyle Sargent ("**Sargent Decl.**") (ECF No. 53-3); Decl. of Talia Smith ("**Smith Decl.**") (ECF No. 53-4).[4] Like the other Opt-In Plaintiffs, these two declarants both

---

[4] The Plaintiffs also submitted two additional declarations from a current Meat & Seafood Manager and a current Bakery Manager, both of whom make assertions similar to the Plaintiffs about

12

aver that, despite being salaried department managers, they spent most of their time doing the same type of grocery sales and customer service work as hourly employees. Sargent Decl. ¶ 4; Smith Decl. ¶ 9. They also state that Center Store Managers were paid on the same pay scale as other department managers and that "the job duties and responsibilities of the manager positions for the various departments in Hannaford stores are basically similar: grocery sales, serving customers, following corporate guidelines and instructions including Standard Practice Training Aids and labor budgets, using the same corporate systems for scheduling and ordering, and stocking and putting things away." Sargent Decl. ¶¶ 2, 5; Smith Decl. ¶¶ 2, 4–5.

Finally, Hannaford contends that proceeding as a collective action will cause case management problems because whether an employee was appropriately classified as exempt is an individualized and fact-specific inquiry. Def.'s Opp'n 23–25. That may be true, but that is why—at the *second* stage of the certification process—courts consider the "factual and employment settings of the individual plaintiffs," their individualized defenses, and "the degree of fairness and procedural impact" of certifying the action as a collective action. *Prescott*, 729 F. Supp. 2d at 364 (citation modified and citation omitted). At this lenient first stage, I do not consider those factors.

Accordingly, I conclude that the Plaintiffs have presented sufficient evidence that they are similarly situated under the FLSA to conditionally certify the requested

---

their job duties, pay, and the mandated use of Standard Practice Training Aids and labor budgets. *See* Decl. of Veronica Hamilton (ECF No. 53-1); Decl. of Casey Smith (ECF No. 53-2).

collective and justify notice to current and former salaried department managers at Hannaford. I therefore conditionally certify the following collective:

> All current and former salary-paid department managers in Defendant's stores, including Bakery (or Bakery Sales) Managers, Deli (or Deli Sales) Managers, Deli/Bakery (or Deli/Seafood, or Deli/Seafood Sales, or Deli/Bakery Sales) Managers, Produce (or Produce Sales) Managers, Meat Market (or Meat Market Sales) Managers, Meat/Seafood (or Meat Market/Seafood, or Meat Market/Seafood Sales) Managers, Customer Service Managers, Center Store Managers, plus current and former salary-paid Assistant-titled or Trainee-titled employees working those same departments (collectively, "Department Managers" or "DMs"), from three years prior to September 15, 2025 until the date on which Hannaford reclassified these positions as non-exempt, but excluding (i) the "Evening Operations Managers" and "Associate Relations Managers," and (ii) any DMs whose claims were released as Massachusetts class action settlement participants listed in Exhibit A to the Settlement Agreement approved by the Court in in *Prinzo v. Hannaford Bros. Co., LLC*, 21-cv-11901-WGY (D. Mass.) who were not paid as salaried exempt at any time after October 28, 2023 for working an exempt-paid DM position (the "Collective").

## II. Notice

Having determined that notice is warranted, I turn now to the notice process. The Plaintiffs have filed a proposed order regarding the content and methods of distributing notice to potential collective action members. *See* [Proposed] Order Granting Pls.' Mot. for Notice and Conditional Certification ("**Proposed Order**") (ECF No. 24-1). The proposed order would (1) require Hannaford to provide a mutually chosen Notice Administrator with a list "of all persons employed as ASMs within the above-defined collective" within fourteen days; (2) approve Vye's proposed "Notice and Consent to Join" form ("**Notice**") (ECF No. 24-14); (3) order the Notice Administrator to mail and email that Notice to all collective members and send reminders; (4) authorize the Notice Administrator to create a website where the

14

Notice may be viewed and collective members may submit consents; and (5) order the Notice Administrator to post the Notice and a QR code linking to the Notice Administrator's website "at workplaces where any member of the Collective works." Proposed Order 2–3.

Hannaford takes issue with the proposed Notice and points to the parties' joint discovery and motion plan filed in December of 2024. *See* Joint Proposed Disc. and Mot. Plan ("**Joint Plan**") (ECF No. 19). In that document, the parties proposed that "[i]f the Court grants Plaintiff's motion for conditional certification under Section 216(b) of the FLSA, in whole or in part, the Parties may agree upon a Section 216(b) Notice for Court approval" within fourteen days of the Court's decision. Joint Plan 2. The document further suggests that the parties would "submit any unresolved issues to the Court" if they failed to reach an agreement. Joint Plan 2. The Plaintiffs disagree that the parties ever agreed to reserve consideration of the notice procedures. Pls.' Reply in Supp. of Mot. for Notice and Conditional Certification 10 (ECF No. 53).

Regardless of any agreements the parties may have reached in 2024, the Court did not adopt that part of their proposed plan, and I see no reason to wait to start the notice process. Accordingly, I direct Hannaford to provide the Plaintiffs (or an agreed-upon notice administrator) with an electronic list of all persons employed as Department Managers within the above-defined collective by September 18, 2025. That list must include names, last-known mailing and email addresses, telephone numbers, positions worked within the relevant time period, and the dates of employment in each such position. However, I reserve ruling on the content of the

15

Notice and the proposed distribution procedures for a period of one week, during which I encourage the parties to confer and try to reach agreement. If the parties cannot agree, Hannaford has until September 22, 2025 to file an objection (using the ECF event "Objection to Document Other Than a Motion") to the Plaintiffs' proposed Notice or distribution procedures. Any objection should be specific and, where appropriate, should propose an alternative.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Plaintiffs' motion for conditional certification of this FLSA collective action.

I **ORDER** Hannaford to provide the Plaintiffs a list, in electronic format, of all persons employed as Department Managers within the above-defined collective, including names, last-known mailing and email addresses, telephone numbers, positions worked within the relevant time period, and the dates of employment in each such position. I **DEFER RULING** on the Plaintiffs' motion for approval of their proposed notice and consent forms and for authorization to distribute them. If the parties are unable to reach agreement on the Notice content and procedure, the deadline for Hannaford to file any objection is September 22, 2025.

SO ORDERED.

/s/ Nancy Torresen<br>United States District Judge

Dated this 15th day of September, 2025.